IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WALTER SMITH,

    Plaintiff,

v.

JEFFREY PUGH, et al.,

    Defendants.

OPINION AND ORDER

19-cv-947-wmc

Plaintiff Walter Smith, representing himself, claims that, despite his repeated complaints, various employees of the Wisconsin Department of Corrections violated his statutory and constitutional rights by providing him with *cold* Ramadan meals that made him sick. Defendants have filed a motion for summary judgment on all of plaintiff's claims with supporting materials. (Dkt. #44.) Despite receiving two extensions of time to file his opposition materials (dkt. ##61, 67), plaintiff has still failed to file any response. Accordingly, the court has accepted defendants' proposed findings of fact as undisputed, so long as they are supported by admissible evidence. Based on those facts, as well as plaintiff's deposition testimony (dkt. #63) and other evidence in the record, the court concludes that summary judgment must be granted because that there is *no* evidence showing that the temperature of the Ramadan meals caused plaintiff's gastrointestinal problems. Nor is there evidence that defendants failed to provide adequate treatment for plaintiff's health complaints. Accordingly, summary judgment will be granted for defendants and this case will be closed.

UNDISPUTED FACTS[1]

### I.   Ramadan Meals at Stanley Correctional Institution

Plaintiff Walter Smith is currently incarcerated at Stanley Correctional Institution. He is a practicing Sunni Muslim and has been for more than 25 years. As part of his faith, Smith fasts from sunrise-to-sunset for the entire month of Ramadan and has done so for years.[2] The prison normally accommodates this practice by providing Ramadan "meal bags" at sunset to each Muslim prisoner listed as eligible by the prison's chaplain. Each Ramadan meal bag contains two meals: the post-sunset dinner and the next morning's pre-sunrise breakfast.

The Food Service Unit ("FSU") at Stanley prepares the Ramadan meal bags in advance, as the meal bags are served after the kitchen is closed at 6 p.m for the day. Stanley does not have sufficient staff to operate its kitchen after hours to heat the Ramadan meal bags; nor does it have hot carts or trays that could keep food warm to guarantee its safety. As a result, the contents of the Ramadan meal bags differ from regular meals served to non-fasting inmates because the food must be eaten cold or at room temperature, and the pre-sunrise breakfast meal must last until morning without refrigeration. The meal bags are stored in a walk-in, industrial style refrigerator in the FSU, then transported to each unit

---

[1] The following facts are drawn from the parties' proposed findings of facts and responses and are undisputed except where noted. All facts are drawn in the light most favorable to the plaintiff, as the nonmoving party.

[2] "During this month, Muslims observe a strict fast from dawn until sunset. They are not allowed to eat or drink (even water) during daylight hours. Fasting is a private act of worship bringing about nearness to God, as well as a form of spiritual discipline and a means to empathize with those less fortunate. The fast is broken at the end of the day with prayer and a festive meal called an iftar." https://www.brandeis.edu/spiritual-life/resources/guide-to-observances/ramadan.html#:~:text= During%20this%20month%2C%20Muslims%20observe,empathize%20with%20those%20less%2 0fortunate.

2

on the date they are to be served.

Various types of meal bags are prepared. The standard "general fare" bag contains items such as sandwiches, fresh fruit and vegetables, and high-caloric foods (generally providing between 2500 to 2700 calories per day). An example of a "general fare" meal bag covering one day for Ramadan at the Stanley Correctional Institution in 2018 was:

- • Morning meal: one piece of fresh fruit; sixteen ounces of cereal; four slices of bread; four packets of peanut butter; two packets of assorted jelly; two packets of sugar; 16 ounces of assorted flavor drink; and six soda crackers

- • Evening meal: one halal chicken patty; four ounces of baked beans; one ounce of potato chips; three ounces of relishes; one piece of fresh fruit; four packets of peanut butter; four slices of bread; two packets of milk-free margarine; and sixteen ounces of assorted flavor drink.

FSU also prepares bags to account for specific religious and medical needs, including bags that are Halal, plant-based, dairy-free, low-sodium, low-fat/cholesterol, or nut and soy free. Such special meal bags must be approved by the chaplain (for religious requests) or the Health Services Unit ("HSU") for medical requests. For medical diets in particular, it is up to the discretion of the inmate's primary care provider as to whether a modified diet is medically necessary for the patient. Each year the facility proposes Ramadan menus based on specific inmate needs, which DOC's dietetic services director reviews for budgeting purposes and to ensure caloric and nutritional requirements are met.

## II.   Smith's Irritable Bowel Syndrome and Ramadan

Since 2007, Smith has complained to various prison staff at various prisons that the Ramadan meal bags contain unhealthy, cold meals that exacerbate his irritable bowel syndrome ("IBS"). This case relates specifically to his complaints at Stanley Correctional

3

between 2012 and 2018.  During those years, Smith complained about the meal bags to all of the named defendants, who include security staff, food services staff, HSU staff and supervisory officials.  Specifically, he wrote letters before the start of Ramadan each year, informing defendants that he expected to suffer from a number of gastrointestinal issues throughout Ramadan and requesting a diet accommodation of warm meals.  In certain years, he included additional complaints about the substance or healthiness of the Ramadan meal bags.

     IBS is a functional disorder of the gastrointestinal tract characterized by chronic abdominal pain and altered bowel habits.  People with IBS may experience uncomfortable symptoms, including stomach pain, abdominal cramping, bloating, excess gas, stools containing mucous, diarrhea, constipation, and/or alternating diarrhea and constipation.  IBS symptoms can be triggered by a variety of things, including certain foods, stress, anxiety, lack of exercise, medications or hormonal changes, with diet playing an important role in triggering symptoms of IBS.  Common food triggers include but are not limited to: greasy food with a high fat content, wheat products, dairy products, citrus fruits, eggs, onions, nuts, caffeine, sorbitol and alcohol.  A high fiber diet is often recommended for those suffering from IBS, but some patients do better with a low fiber diet.  Drinking enough water is also important, as water consumption has a direct effect on whether a person's intestinal systems can operate properly.  However, IBS is very individualized and there is no particular food or type of diet common to everyone with IBS that leads to symptoms.  For this reason, DOC does not have a specific medical diet for people with IBS, as no particular diet or medication is helpful to all patients.

To treat and manage IBS, medical providers generally recommend that patients determine what triggers an individual's symptoms by keeping a food diary. One approach is to remove a food or food category, watch and note symptoms, and slowly reintroduce the food back into the diet and track symptoms – an "elimination diet." As stress plays a large role in IBS, however, it can be difficult to identify whether a certain food is a trigger, or whether it was stress from a certain situation. Most patients with IBS have chronic symptoms that vary in severity over time.

As mentioned, Smith complained on numerous occasions to HSU and other prison staff that the cold Ramadan meal bags exacerbated his IBS and caused him to suffer terrible abdominal pains, cramps and diarrhea that continued for six to seven months after Ramadan. Thus, he requested hot meals or the ability to warm up the Ramadan meals. However, his medical providers responded that there was *no* medical basis to think the temperature of his meals would exacerbate IBS or cause the symptoms about which he complained. Rather, to the extent his symptoms were related to his Ramadan fast, medical staff thought it more likely that fasting *itself* caused the problems.

More specifically, his medical providers believe that if Smith was abstaining from drinking water during daylight hours, he was probably not drinking enough to manage his IBS. In addition, they also believe his IBS could be further exacerbated by the substantial changes in eating patterns associated with fasting, including: eating all of his calories during the nighttime; eating too large of portions at a time; eating shortly before laying down to sleep; and eating a diet different from the one that was typically served. For these reasons, his medical providers declined to recommend that Smith receive a medical diet or an accommodation that required warm meals.

5

Nonetheless, Smith has continued to fast during Ramadan, and continued to complain about his gastrointestinal distress. HSU nevertheless responded by: providing him with GI medications; referring him for a colonoscopy to rule out inflammatory bowel disease; recommending that he increase his water intake; and suggesting that he consult with his chaplain for religious guidance about the Ramadan fast. As to the latter, Smith himself believed that he could not abstain from the Ramadan fast, because Islam excuses only people with serious medical issues from fasting during Ramadan. However, Smith has concluded his medical problems were not severe enough to exempt him from the fast, given that he eventually recovers from them, albeit only months later.

Eventually, in 2019, the warden at Stanley Correctional gave Smith permission to use the microwave in the dayroom of his unit to heat his Ramadan evening meal bags, and since that time, staff has opened the dayroom specifically for Smith to heat up his food. No other inmate has received this accommodation, and it is not certain how long the accommodation will continue, given the lack of any religious or medical reason for doing so, a lack of HSU approval, the burden on staff, an appearance of favoritism to Smith, and the chance that Smith will be transferred to a unit without a microwave. Notably, Smith has continued to complain about GI problems caused by his now warm food during Ramadan.

OPINION

Plaintiff has sued defendants for violating his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment and the Eighth Amendment.

I.   RLUIPA

The court begins with plaintiff's RLUIPA claim for injunctive relief, because RLUIPA provides broader protection for religious liberty than does the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015).[3]  So, if plaintiff's RLUIPA claim fails, his free-exercise claims under the First Amendment fail as well.  *See Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at *3 (W.D. Wis. Aug. 15, 2017).

RLUIPA prohibits prison officials from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless the government demonstrates that imposition of the burden on that person … is the least restrictive means of furthering [a] compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  *See also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).  To prove a RLUIPA claim, the plaintiff has the initial burden to show that he has a sincere religious belief.  *Holt*, 574 U.S. at 360–61.  Here, the parties agree that plaintiff has a sincere belief that fasting during Ramadan is a practice required by his faith.

Plaintiff also has the burden to show that DOC's policies substantially burden his religious exercise.  *Id.* at 361–62.  A substantial burden is one that pressures the individual to "engage in conduct that seriously violates [his] religious beliefs."  *Id.* at 361 (citation omitted); *see also Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981) (a substantial burden

---

[3] Defendants argue briefly that plaintiff's claim for injunctive relief is moot because plaintiff has been allowed to heat up his Ramadan dinner meals since 2019.  However, defendants also concede that this privilege could be taken away if plaintiff is moved to a different unit or if it becomes too cumbersome for staff to manage, so his claim for injunctive relief is not moot.

7

"put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs"). This is where plaintiff's claim begins to flounder. The undisputed evidence shows that defendants accommodated plaintiff's religious beliefs by preparing and delivering meal bags that permitted him to fast during the month of Ramadan. At no point has plaintiff claimed that his religious beliefs required a hot meal or that the prison's accommodation was otherwise inadequate on religious grounds. Although forcing "a prisoner to choose between adequate nutrition and religious practice . . . impos[es] a substantial burden" on religion, *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019), plaintiff has not shown that he's had to choose between nutritional needs and his religious beliefs. *See Thompson v. Bukowski*, 812 F. App'x 360, 365 (7th Cir. 2020) (dismissing free exercise claim based on inadequate Ramadan meals because "a reasonable juror could not conclude that Thompson was forced to choose between necessary nutrition and his ability to observe Ramadan.")

Finally, although there is no doubt that suffering GI problems for six to seven months after Ramadan is a substantial burden, plaintiff has submitted *no* evidence showing that the temperature of the meals is what caused his GI distress. Instead, all of the admissible evidence in the record suggests that the temperature of the meal bags was *not* the cause of plaintiff's medical problems.[4] Specifically, according to plaintiff's own doctor, (1) he did not need a medical diet; and (2) there was no medical reason for plaintiff to warm his food. To the contrary, the meal bags provided sufficient calories and nutrition and were reviewed and approved by a dietician. Thus, to the extent his GI problems

---

[4] Plaintiff alleged in his unverified complaint and during his deposition that the temperature of the foods exacerbated his IBS. However, plaintiff's own opinion is not admissible to prove causation. He has no medical expertise, and no basis for concluding that the temperature of the meals caused any worsening symptoms, as opposed to the general changes in his eating habits during Ramadan.

8

increased during Ramadan, the more likely cause was increased stress or the fasting itself, which substantially altered plaintiff's normal eating and drinking habits. Based on this evidence, no reasonable jury could conclude that plaintiff's practice of Islam was substantially burdened by receiving unheated, Ramadan meal bags. Accordingly, defendants are entitled to summary judgment on plaintiff's RLUIPA claim.

### II. First Amendment Free Exercise

Plaintiff brings parallel First Amendment free-exercise claims for damages against defendants. Like an RLUIPA claim, a free-exercise claim requires a plaintiff to "submit evidence from which a jury could reasonably find that the defendant[ ] personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)).

As discussed, plaintiff has failed to submit any evidence from which a jury could conclude that his practice of Islam was substantially burdened by receiving unheated meals during Ramadan. Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment claim as well. *See Ajala v. West*, No. 13-CV-184-BBC, 2014 WL 5611243, at *11 (W.D. Wis. Nov. 4, 2014) (dismissing First Amendment claim based on delivery of cold meals rather than hot ones during Ramadan because plaintiff did not "suggest that the difference between cold and hot meals has any religious significance in Islam").

### III. Eighth Amendment Deliberate Indifference

Finally, no reasonable juror could find for plaintiff on his deliberate-indifference claim either. The Eighth Amendment prohibits prison officials from knowingly disregarding substantial risks of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994); *Estate of Miller v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). Prison officials also must provide humane conditions of confinement, including medical care and food that provides adequate nutrition. *Id.*; *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). Assuming that plaintiff's severe GI symptoms during and after Ramadan amount to an objectively serious harm, plaintiff cannot establish that defendants responded with deliberate indifference to plaintiff's medical problems. Instead, plaintiff's medical records show that HSU acknowledged and treated plaintiff's GI complaints on numerous occasions during the relevant time period, including by receiving GI medications, a colonoscopy to rule out inflammatory bowel disease, and recommendations to increase fluid intake and consult with his chaplain for religious guidance. Thus, the non-medical defendants deferred to the judgment of plaintiff's treating providers, as they are permitted to do, and the warden even went beyond that advice by eventually allowing plaintiff to heat his meals. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). For these reasons, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim as well.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #44) is GRANTED.

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 24th day of January, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

11